FILED
2025 Mar-10  PM 04:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **BEST CENTER FAIRFIELD, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No.: 2:22-cv-00054-AMM** |
| **v.** | ) | |
| | ) | |
| **STEADFAST INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

This case is before the court on a motion for summary judgment by defendant, Steadfast Insurance Company. Doc. 61. For the reasons explained below, the motion is **GRANTED**. Steadfast also filed a motion to preclude expert testimony, which is **DENIED** as moot. Doc. 60.

## I.    BACKGROUND

Facts set forth in the parties' statement of undisputed facts are deemed admitted for summary judgment purposes unless controverted by the response or reply of the opposing party. These are the material facts construed in the light most favorable to plaintiff Best Center Fairfield, LLC:

This case involves a dispute about coverage under a commercial insurance policy issued to Best Center by Steadfast. Best Center is a limited liability company

located in Houston, Texas. Doc. 59-1 at 39. At its creation, Robin Parsley, the founding member, had a ninety percent ownership interest and John Hammond had a ten percent interest. Doc. 59-12 at 4; Doc. 59-1 at 7. Steadfast is an insurer, located in Illinois that services persons, businesses, and governmental entities throughout Texas and Alabama.[1] Doc. 40 ¶ 2.

Best Center purchased property in Fairfield, Alabama that previously housed a Wal-Mart supercenter, with plans to maintain it as a storage facility. Doc. 59-1 at 4–5. To insure this property, Best Center purchased a commercial insurance policy from Steadfast to be effective from October 28, 2016, to October 28, 2017. Doc. 59-11 at 15–16. Best Center renewed this policy on October 28, 2017, but it was cancelled on March 15, 2018, due to nonpayment. *Id*. at 16.

In its second amended complaint, Best Center asserted that this facility was subject to two separate incidents of vandalism and theft in 2017. Doc. 40 ¶¶ 12, 14. Best Center asserted that the first incident occurred "on or around May 17, 2017," and the second incident occurred in either June or December of 2017. *Id*. Best Center also asserted that "[a] police report regarding these theft incidences was filed [with

---

[1] Best Center's members were residents of Texas at the time Steadfast filed this notice of removal. Doc. 77 ¶ 4. Steadfast is an Illinois corporation with its principal place of business in Illinois. Doc. 40 ¶ 2. Additionally, Best Center seeks over $75,000 in damages. *Id*. at 30–31. Accordingly, jurisdiction is proper under 28 U.S.C. Section 1332.

the Fairfield Police Department] in 2017." *Id*. ¶ 15. But "due to an old computer system, the Department no longer had access to those files." *Id*.

The record reflects that on June 5, 2019, Mr. Parsley filed a police report with the Fairfield Police Department regarding vandalism and theft that the facility allegedly suffered in 2017. Doc. 69-4. This report states:

> The victim, Robin Parsley, contacted Fairfield Police about damage to his property located at 7201 Aaron Aronov Drive Fairfield, AL 35064. This location is commonly referred to as the old Walmart Super Center. Mr. Parsley stated someone unlawfully entered his commercial building with the intent to steal copper wiring and piping. The responsible person destroyed sheet rock, destroyed industrial air conditioning units, and stole the copper wiring and tubing within and connected to the commercial building. The vandals / thieves destroyed and stole approximately $3,000,000 worth of property. Mr. Parsley stated the offense occurred between 02/01/2017 and 03/31/2017. Mr. Parsley stated he contacted Fairfield Police at the time of the offense and made a police report. Police were unable to retrieve the report and this report was generated in order to document the theft and damages. I, Deputy Chief Christopher Riddle, entered the property around the time frame given by the victim and observed the damages to the building. The damages were indicative of someone stealing copper wiring and piping from the commercial building. Also, it appeared several doors near the automotive section of the building were forced open in order to gain entry in to the building.

*Id*. at 2.

Steadfast received an "initial loss notice" from Best Center in 2019 regarding

vandalism and theft that had allegedly occurred in 2017. Doc. 62 ¶¶ 23, 63. Steadfast asserts that this was the first notice that Best Center provided regarding the alleged incidents. *Id*. ¶ 21. Additionally, Steadfast disputes the number of vandalism and theft incidents as well as the dates of their occurrence. *Id*. ¶¶ 66–67.

In its evidentiary submissions, Best Center includes a recorded statement from Jeff Arnold, Best Center's independent insurance agent from Magnolia Independent Insurance, in which he states that around February 2017, Jeremy Sampson, a Best Center employee, called Mr. Arnold to notify him that there had been a break-in. Doc. 69-7 at 2. Following this phone call, Mr. Arnold states that he reached out to Best Center's employees on numerous occasions, requesting written confirmation of the break-in. *Id*. at 2, 12, 15. Mr. Arnold states that he could not submit an insurance claim to Steadfast unless Best Center provided further details in writing. *Id*. at 30–31.

In its evidentiary submissions, Steadfast includes a recorded statement from Mr. Sampson, in which he states that he did not make an official claim with Mr. Arnold detailing the vandalism and theft. Doc. 59-13 at 32. Mr. Sampson states that as an employee of Best Center, he did not have the authority to make an official claim, and that Mr. Parsley, as the owner of Best Center, was the only individual who possessed this authority. *Id*. Mr. Sampson states that his last understanding of

4

the situation was that Mr. Arnold was awaiting approval from Mr. Parsley to open an insurance claim with Steadfast. *Id*. at 33.

On January 15, 2019, Mr. Parsley filed a "property loss notice" with Mr. Arnold and listed the "date of loss" as February 2017. *See* Doc. 59-8. The description in the notice states that "[u]nknown persons vandalized premises and stole copper." *Id*. at 2. Steadfast acknowledged receipt of this property loss notice on January 16, 2019. Doc. 62 ¶ 23.

Steadfast's corporate representative, Jeff Morrow, who served as an assistant vice president and claim manager, testified that "the loss wasn't reported until 2019" and that their company did not "have any records of any other reporting of loss to any of the Best Center Fairfield, LLC, property." Doc. 59-10 at 19: 8–12, 99:13–14, 252:15–22.

Best Center's corporate representative, Mr. Hammond, testified that he "first [found] out that the company had sustained . . . losses, vandalism, [and] theft" in 2017. Doc. 59-1 at 30:13–19; 69:22–25; 70:1–6. Mr. Hammond also testified that he did not believe that Best Center reported the vandalism and theft to Steadfast until January 15, 2019, Doc. 59-12 at 111:9–12, and that Mr. Parsley "never told [him] about the police report" and did not tell him that he had contacted Steadfast to report the claim, *id*. at 22:1–22 and 23:14–16. When asked "whether there was anything

that prohibited [Mr. Parsley] from being able to contact [Steadfast] and report the claim" from 2017, Mr. Hammond testified that he knew of no reason. *Id*. at 23:17–22. When asked whether "there was anything that prevented [Best Center] from providing Steadfast as soon as possible with a description as to how, when and where the loss or damage occurred resulting from that [February 2017] theft," Mr. Hammond testified that he knew of no reason. *Id*. at 23:23–25, 24:1–6. Finally, Mr. Hammond testified that some information regarding the vandalism and theft incidents was lacking because Mr. Parsley's assistant, who had the relevant documents, was terminally ill and may have died. *Id*. at 113:20–25; 114:1–5. Mr. Hammond also testified that Mr. Parsley was hospitalized with serious health problems as of 2024, and that his "health has deteriorated" since the purchase of Best Center's facility. *Id*. at 114:5–13.

Best Center "concedes that an official written notice of loss on the February/March 2017 theft occurrence was not provided to Defendant until January 2019; thus, its notice was late as a matter of law." Doc. 70 at 19; *see also* Doc. 40 ¶ 16. Best Center attributes the delay in reporting to Mr. Parsley's poor health as well as his assistant's poor health. Doc. 70 at 19–20.

Upon receiving the property loss notice from Best Center on January 15, 2019, Steadfast commenced an investigation that developed over multiple years. The

record contains evidence of emails, phone calls, a site visit, an examination under oath, and numerous information requests that Steadfast made to Best Center as part of this investigation. Doc 59-12 at 95–98, 100–106, 123–132; Doc. 59-19 at 95–97; Doc. 59-21 at 47–48; Doc. 59-10 at 103; Doc 59-47 at 1–17; Doc. 59-43; Doc. 59-44; Doc. 59-45.

On August 26, 2021, Steadfast issued a final decision denying Best Center's claim. Doc. 59-11 at 25–31. Steadfast attributed the denial, in part, to Best Center's delay in reporting the vandalism and theft. *Id.* at 27.

Best Center sued Steadfast and asserts twelve claims: Count I, Breach of contract for failure to investigate and afford coverage, Doc. 40 ¶¶ 23–28; Count II, Bad faith, *Id.* ¶¶ 29–32; Count III, Violations of Chapter 541.060(a)(7) of the Texas Insurance Code, *Id.* ¶¶ 33–36; Count IV, Violations of Chapter 541.060(a)(2) of the Texas Insurance Code, *Id.* ¶¶ 37–39; Count V, Violations of Chapter 541.060(a)(4)(A) of the Texas Insurance Code, *Id.* ¶¶ 40–41; Count VI, Violations of Chapter 541.060(a)(3) of the Texas Insurance Code, *Id.* ¶¶ 42–43; Count VII, Violations of Chapter 541.060(a)(1) of the Texas Insurance Code, *Id.* ¶¶ 44–45; Count VIII, Violations of Chapter 542.055 of the Texas Insurance Code, *Id.* ¶¶ 46–47; Count IX, Violations of Chapter 542.056 of the Texas Insurance Code, *Id.* ¶ 48; Count X, Violations of Chapter 542.057 of the Texas Insurance Code, *Id.* ¶ 49; Count

XI, Violations of Chapter 542.058 of the Texas Insurance Code, *Id*. ¶¶ 50–51; Count

XII, Breach of the Duty of Good Faith and Fair Dealing, *Id*. ¶¶ 52–54.

Steadfast filed this motion for summary judgment, which is fully briefed. Docs. 62, 70, 73. Steadfast filed a motion to preclude expert testimony should this case proceed to trial. Doc. 60.

## II.   LEGAL STANDARD

Summary judgment is appropriate when the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). If the moving party has carried its burden, Rule 56 requires that the nonmoving party "go beyond the pleadings" and establish that there is a material fact in genuine dispute. *Celotex*, 477 U.S. at 324–25; *see also* Fed. R. Civ. P. 56(c)(1)(A). A fact is "material" if it could "affect the outcome" of the case. *Furcron v. Mail Ctrs. Plus*, *LLC*, 843 F.3d 1295, 1303 (11th Cir. 2016) (internal quotation marks omitted). A material fact is in "genuine" dispute if a reasonable jury could return a verdict in favor of the nonmoving party. *Id*.

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether

there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986). "[T]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tolan v. Cotton*, 572 U.S. 650, 651 (2014).

## III.  ANALYSIS

### A. Choice of Law

Steadfast argues that Alabama law controls this insurance policy even though it was issued in Texas. Doc. 62 at 20. Steadfast asserts that the policy insures property located in Alabama, provides that the policy is "registered and delivered as surplus lines coverage under Alabama surplus lines insurance law," includes Alabama-specific endorsements, and was subject to an Alabama surplus insurance tax. *Id*. Best Center argues that Texas law applies because that was the place of issuance. Doc. 70 at 13–14.

This court has diversity jurisdiction over this action because it arises between a Texas limited liability company, Best Center, and an Illinois insurance company, Steadfast, and the amount in controversy exceeds $75,000. Doc. 1 at 3–4. Accordingly, this court must apply Alabama choice of law rules to conflict issues. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *see also Wadley Crushed Stone Co., LLC, v. Positive Step, Inc.*, 34 F.4th 1251, 1256 (11th Cir. 2022).

"Alabama law has long recognized the right of parties to an agreement to

9

choose a particular state's laws to govern an agreement." *Cherry, Bekaert & Holland v. Brown*, 582 So. 2d 502, 506 (Ala. 1991). "The law of the state chosen by the parties . . . will be applied" so long as it is not contrary to the fundamental public policy of the forum state. *Id*. at 507 (internal quotation marks omitted).

This policy repeatedly references Alabama law. The Common Policy Declarations within the policy state, "[t]his contract is registered and delivered as a surplus line coverage under Alabama Surplus Lines Insurance Law." Doc. 59-4 at 6. The policy also states that a legal action against Steadfast is allowed if "[t]he action is brought within the time limitations prescribed by Alabama law." Doc. 59-5 at 22. Additionally, the policy includes Alabama-specific endorsements and notes that it was subject to an Alabama surplus insurance tax. Doc. 59-2 at 8–9; Doc. 59-1 at 50. These references manifest the parties' intention that Alabama law would control the interpretation of the contract. There are no such references to the law of Texas.

Although these provisions are not the same as a single, traditional choice-of-law provision, *see, e.g., Homes of Legend, Inc. v. McCollough*, 776 So. 2d 741, 743 (Ala. 2000), the court does not assign them less weight than it would such a traditional provision. They manifest the parties' intentions about being controlled by Alabama law, and they are not ambiguous. Further, they would be meaningless and impliedly invalidated if the court were to apply Texas law despite them.

10

**B. Capacity To Sue**

Steadfast argues that Best Center lacks capacity to sue because on October 19, 2018, the Texas Secretary of State forfeited its charter and recorded the notice of forfeiture in Best Center's permanent files and records. Doc. 59-48 at 2; Doc. 62 at 21. Best Center responds that it cured this defect and reinstated its corporate privileges, including its capacity to bring lawsuits, by making the requisite payments. Doc. 69-1 at 2; Doc. 70 at 19.

The capacity of a corporation to sue or be sued shall be determined "by the law under which it was organized." Fed. R. Civ. P. 17(b). Best Center was organized under Texas law, Doc. 69-1 at 1, so this court turns to Texas law to determine whether Best Center had capacity to bring this lawsuit.

Under Texas law, a corporation whose charter is forfeited is entitled to have its charter and corporate privileges revived if the corporation pays the tax, penalty, and interest that is imposed by the tax code. Tex. Tax Code Section 171.312. Once the corporation pays the delinquent taxes and is reinstated, this payment will relate back and revive whatever rights the corporation had previously forfeited. *Mello v. A.M.F. Inc.*, 7 S.W.3d 329, 331 (Tex. App. 1999); *see also Hourani v. Katzen*, 305 S.W.3d 239, 250 (Tex. App. 2009); *Highline Innovation Invs. P'ship, LLC v. Biolert, Ltd.*, No. 4:21-CV-00615, 2022 WL 3354775, at *4–*5 (E.D. Tex. Aug. 12, 2022);

*NexBank, SSB v. Bank Midwest, N.A.*, No. 3:12-CV-1882-D, 2012 WL 4321750, at *3 (N.D. Tex. Sept. 21, 2012).

The Texas Secretary of State forfeited Best Center's charter on October 19, 2018. Doc. 59-48 at 2. As a result, Best Center lacked capacity to sue when it filed this lawsuit on December 2021. But on April 10, 2024, the Texas Secretary of State certified Best Center's application for reinstatement and found it to conform to law. Doc. 69-1 at 2. Under Texas law, this reinstatement revived Best Center's corporate privileges, including its capacity to sue, and related back to the time this lawsuit was filed. *See Mello*, 7 S.W.3d at 331.

## C. Prompt Notice

Steadfast argues that it is entitled to summary judgment because providing prompt notice of Best Center's damage is a condition precedent to bringing suit, and Best Center failed to provide prompt notice. Doc. 62 at 22. Under Alabama law, a condition precedent is defined as "[a]n act or event, other than a lapse of time, that must exist or occur before a duty to perform something promised arises." *Lemoine Co. of Ala., L.L.C. v. HLH Constructors, Inc.*, 62 So. 3d 1020, 1025 n.5 (Ala. 2010) (quoting Black's Law Dictionary). "Whether a provision in a contract is a condition precedent depends, not upon formal words, but upon the intent of the parties, to be deduced from the instrument as a whole." *Gamble v. Corley, Moncus, & Ward, P.C.*,

723 So. 2d 627, 631 (Ala. 1998). "[T]he failure of an insured to comply within a reasonable time with . . . conditions precedent in an insurance policy requiring the insured to give notice of an accident or occurrence releases the insurer from obligations imposed by the insurance contract." *Reeves v. State Farm Fire & Cas. Co.*, 539 So. 2d 252, 254 (Ala. 1989).

Steadfast's insurance policy states that the insured must "[g]ive [Steadfast] prompt notice of the loss or damage[, including] a description of the property involved." Doc. 59-4 at 27. Additionally, the insured must "[a]s soon as possible, give [Steadfast] a description of how, when and where the loss or damage occurred." *Id*. Finally, "[n]o one may bring a legal action against [Steadfast] under this Coverage Part unless: There has been full compliance with all of the terms of this Coverage Part." Doc. 59-5 at 22.

Steadfast's policy does not use the words, "condition precedent," but it is evident from the provision that "[n]o one may bring a legal action against [Steadfast] under this Coverage Part unless: There has been full compliance with all of the terms of this Coverage Part," that the parties intended for "prompt notice" to be a precondition to suit. Doc. 59-4 at 27; Doc. 59-5 at 22; *accord Sharp Realty & Mgmt., LLC v. Cap. Specialty Ins. Corp.*, 503 F. App'x 704, 707–08 (11th Cir. 2013).

Under Alabama law, a "prompt notice" requirement in an insurance policy

13

has been "interpreted to mean that notice [of an accident or occurrence] must be given within a reasonable time in view of the facts and circumstances of the case." *Travelers Indem. Co. of Conn. v. Miller*, 86 So. 3d 338, 342 (Ala. 2011) (internal quotation marks omitted). In *Nationwide Mutual Fire Insurance Co. v. Estate of Files*, the insured was injured on May 1, 2001. 10 So. 3d 533, 533 (Ala. 2008). The insurance company first learned of this incident on October 1, 2001, from the individual's attorney. *Id*. The insurance company refused coverage because providing notice "as soon as practicable" was a condition precedent to coverage and the insured failed to satisfy this condition. *Id*. The Alabama Supreme Court agreed with the insurance company, reasoning that "[a] five-month delay in giving notice is sufficiently protracted as to require the insured to offer evidence of a reasonable excuse for the delay." *Id*. at 536. The insured provided no such evidence, prompting the court to hold that he failed to comply with the notice requirement of his insurance policy and was not entitled to coverage. *Id*.

Steadfast argues that Best Center breached the prompt notice condition when it waited over one year to report the incidents of vandalism and theft. Doc. 62 at 22–23. Steadfast argues that by failing to satisfy this condition, Best Center is precluded from maintaining this action. *Id*.

In response, Best Center "concedes that an official written notice of loss on

14

the February/March 2017 theft occurrence was not provided to Defendant until January 2019; thus, its notice was late as a matter of law." Doc. 70 at 19. Nevertheless, Best Center urges this court to excuse this delay because it was unintentional and did not prejudice Steadfast. *Id.* at 20.

Consistent with Best Center's concession, there is no evidence in the record that Steadfast was notified of the 2017 incidents before January 2019, which is over one year after the facility experienced vandalism and theft, Doc. 59-8 at 2, and Best Center was aware of that vandalism and theft, Doc. 59-1 at 30:13–19; 69:22–25; 70:1–6; Doc. 59-31 at 4. Moreover, Best Center's delay in reporting is significantly longer than the delay involved in *Nationwide Mutual Fire Insurance Co.*, which the Alabama Supreme Court found "sufficiently protracted as to require the insured to offer evidence of a reasonable excuse for the delay." 10 So. 3d at 536. Accordingly, there is no dispute that Best Center failed to provide Steadfast prompt notice.

Under Alabama law, when notice is not prompt, the insured must furnish a reasonable excuse for the delay to have coverage. *Reeves*, 539 So. 2d at 255. "Only two factors are to be considered in determining the reasonableness of a delay in giving notice to the insurer: the length of the delay and the reasons for the delay." *Travelers Indem. Co.*, 86 So. 3d at 342. "Prejudice to the insurer from any such delay in providing notice is not a factor." *Id*. "If the insured offers excuses for the delay

15

and those excuses may reasonably be said to justify the length of the delay in giving notice, then the issue of the reasonableness of the delay is for a jury to determine." *Reeves*, 539 So. 2d at 255. "However, there are certain instances in which the excuse offered by the insured to justify the delay are unreasonable as a matter of law and afford no basis for submitting the issue to the jury." *Id*.

Best Center asserts three excuses. Although Best Center does not rely on Alabama law, the court construes its factual assertions about excuses as raising a reasonableness argument under Alabama law. First, Best Center asserts that Mr. Parsley's administrative assistant was given a terminal prognosis. Doc. 70 ¶ 4. Second, it asserts that Mr. Parsley "was dealing with monetary and health issues." *Id*. at 19. Third, it asserts that Best Center's "employee, Jeremy Sampson believed that the [independent] insurance agent[, Mr. Arnold,] would turn in the claim in 2017." *Id*. Steadfast argues that "Best Center has not and cannot show any reasonable excuse." Doc. 62 at 23. The court discusses each excuse in turn.

As to Best Center's first excuse, there is no evidence from which a reasonable jury could find the health of Mr. Parsley's assistant a reasonable excuse. Best Center cites to an email correspondence between insurance adjusters from March 28, 2019, which states that Mr. Parsley's assistant "was out due to a serious illness for several weeks." Doc. 69-2; Doc. 70 ¶ 4. Best Center also asserts that the assistant was given

16

a "terminal prognosis" on April 24, 2019. Doc. 70 ¶ 4. But there is no evidence that the assistant's 2019 illness could have caused a delay in reporting the 2017 incidents of vandalism and theft because there is no evidence that the assistant was ill before 2019.

As to Best Center's second excuse about Mr. Parsley's poor health and monetary issues, there is a similar evidentiary deficit. *Id*. at 19. Best Center cites to Mr. Hammond's deposition from February 23, 2024, in which he states, Mr. Parsley "is hospitalized at this point, just had a new kidney put in . . . He has severe diabetes . . . . he has either totally lost his eyesight or he cannot drive . . . . And his health has deteriorated ever since this project has started." Doc. 59-12 at 114:5–13. But there is no evidence that Mr. Parsley's hospitalization and related health issues in 2024 caused a delay in reporting the 2017 incidents of theft and vandalism. And indeed, when asked "whether there was anything that prohibited [Mr. Parsley] from being able to contact [Steadfast] and report the claim" from 2017, Mr. Hammond testified that he knew of no reason. *Id*. at 23:17–22. When asked whether "there was anything that prevented [Best Center] from providing Steadfast as soon as possible with a description as to how, when and where the loss or damage occurred resulting from that [February 2017] theft," Mr. Hammond testified that he knew of no reason. *Id*. at 23:23–25, 24:1–6.

Best Center's third excuse is that Mr. Sampson's belief that the independent insurance agent, Mr. Arnold, would turn in the claim in 2017 excuses the delay in reporting. Doc. 70 at 19–20. But the record does not contain evidence that this was Mr. Sampson's belief. In his recorded statement, Mr. Sampson does not express a belief that Mr. Arnold would submit an insurance claim to Steadfast after their conversation. *See* Doc. 59-13 at 32–33. To the contrary, Mr. Sampson states that his "last understanding with [Mr.] Arnold was he was waiting for [Mr. Parsley] to say go open an insurance claim." *Id*. at 33.

Finally, Best Center argues that its delay should nevertheless be excused under Texas law because it did not prejudice Steadfast. Doc. 70 at 20. But Alabama law applies to the interpretation of this insurance policy, and under Alabama law, prejudice need not result from delayed notice to extinguish a lawsuit. *See Correll v. Fireman's Fund Ins. Cos.*, 529 So. 2d 1006, 1008–09 (Ala. 1988) ("The question of whether the insurer was prejudiced by the delay is immaterial [in a case] where . . . the giving of reasonably timely notice is expressly made a condition precedent to any action against the insurer.") (emphasis and internal quotation marks omitted). Indeed, Alabama law directs the court to disregard this argument. *Nationwide Mut. Fire Ins. Co.*, 10 So. 3d at 535 ("Absence of prejudice to the insurer from the delay is not a factor to be considered.") (internal quotation marks omitted).

18

A precondition to bringing a lawsuit against Steadfast was providing "prompt notice of the loss or damage." Doc. 59-4 at 27; Doc. 59-5 at 22. By waiting over one year to report the vandalism and theft incidents, Best Center did not provide "prompt notice" to Steadfast. Accordingly, under Alabama law, Best Center is precluded from maintaining this lawsuit. And in any event, Best Center has provided no excuse for the delay.

## IV. CONCLUSION

For the reasons explained, the court **GRANTS** defendant's motion for summary judgment, Doc. 61.

**DONE** and **ORDERED** this 10th day of March, 2025.



**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE